IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

J & J SPORTS PRODUCTION, INC.,

        Plaintiff,

                                    Case No. 2:15-cv-01624

    v.                          Magistrate Judge King

DIAB ELLAN, *et al.*,

        Defendants.


**OPINION AND ORDER**

This is an action under the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.*, in which plaintiff alleges that defendants, Diab Ellan and House of Montecristo, Inc., intercepted and exhibited a boxing match at the Montecristo Lounge in Columbus, Ohio, without license. *Complaint*, ECF No. 1.[1] This matter is before the Court, with the agreement of the parties pursuant to 28 U.S.C. § 636(c), on *Plaintiff J & J Sports Productions, Inc.'s Motion for Summary Judgment on Diab Ellan and House of Montecristo, Inc.*, ECF No. 17 ("*Plaintiff's Motion*"). Defendants have responded in opposition to *Plaintiff's Motion* and plaintiff has filed a reply. *Brief of Defendants Diab Ellan and House of Montecristo, Inc. in Opposition to Plaintiff's Motion for Summary Judgment*, ECF No. 18 ("*Defendants'*

---

[1] The *Complaint* also asserted a claim under The Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 *et seq.*, and a state law claim of conversion. However, plaintiff indicated at the July 9, 2015 preliminary pretrial conference that it would not pursue that claim. *See Preliminary Pretrial order*, PAGEID# 57, ECF No. 12. Plaintiff seeks summary judgment only on its claim under 47 U.S.C. § 605. *Plaintiff J & J Sports Productions, Inc.'s Motion for Summary Judgment on Diab Ellan and House of Montecristo, Inc.*, PAGEID# 68, n. 1; 70 n.3, ECF No. 17.

*Response")*; *Plaintiff J & J Sports Productions, Inc.'s Reply Brief in Support of their Motion for Summary Judgment on Diab Ellan and House of Montecristo, Inc.*, ECF No. 19 ("*Plaintiff's Reply*"). For the reasons that follow, *Plaintiff's Motion* is **GRANTED.** The Court **DIRECTS** that the parties further brief the issues of damages and attorney fees, should the parties be unable to resolve those issues by agreement.

**I. Background**

    J & J Sports Production, Inc. ("J & J" or "plaintiff") is a commercial distributor of sports and entertainment programming. *Plaintiff's Affidavit in Support of Plaintiff's Motion for Summary Judgment*, ECF No. 17-1, PAGEID# 90 ("*Gagliardi Affidavit 1*"). J & J markets and sells sublicensing rights to commercial customers. *Id.* Joseph Gagliardi is the president of J & J. *Id.* at PAGEID# 89.

    J & J purchased the exclusive commercial exhibition licensing rights to broadcast the closed circuit May 4, 2013 Floyd Mayweather, Jr. v. Robert Guerrero Championship Fight Program and the associated undercard bouts[2] ("the Program") from Golden Boy Promotions, LLC. Exhibit 1, attached to *Gagliardi Affidavit 1*, ECF No. 17-1, PAGEID# 97-102 ("Licensing Agreement"). The Licensing Agreement also granted to J & J the exclusive right to market and sell sublicensing rights in the Program to commercial establishments and to commence or settle any legal claim arising out of piracy of the Program. *Id.* at PAGEID# 97, 100.

---

[2] Included in the undercard bouts were the Rosado v. Love and Santa Cruz v Munoz fights. *See Gagliardi Affidavit 1,* PAGEID# 91.

J & J priced the sublicensing fee for the Program based on the seating capacity of each establishment that purchased a license to show the Program. *Gagliardi Affidavit 1,* PAGEID# 91. This fee schedule, as well as ordering information, was contained in plaintiff's marketing materials. Exhibit 2 to *Gagliardi Affidavit 1,* PAGEID# 104 ("Fee Schedule Flier"). For commercial venues with a seating capacity of up to 100 patrons, the fee was $2,200.00; for venues with a seating capacity of between 100 and 200 patrons, the fee was $4,200.00. *Id.* The Fee Schedule Flier also contains the following language:

> All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G&G Closed Circuit Events Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

*Id.* [sic]. Joseph Gagliardi clarified that G&G was retained by J & J to assist in the sale of sublicensing rights and that, although G&G had the right to market and sell sublicenses on behalf of J & J, it was J & J that retained the exclusive right to pursue litigation in any piracy claim for unauthorized receipt of the broadcast. *Plaintiff's Second Affidavit in Support of Plaintiff's Motion for Summary Judgment*, ECF No. 19-1, PAGEID# 128 ("*Gagliardi Affidavit 2*").[3]

On May 4, 2013, two individuals hired by J & J entered the Montecristo Lounge to investigate the unlicensed broadcast of the Program. *Gagliardi Affidavit 1*, PAGEID# 90-91. The first, Terron

---

[3] Although the *Gagiardi Affidavit 2* was attached to *Plaintiff's Reply*, defendants have not asked to supplement their opposition to *Plaintiff's Motion*, nor have defendants otherwise addressed the facts averred in this affidavit.

Mitchell, avers that he entered the Montecristo Lounge, paid a cover charge of $22.94,[4] and observed the Rosado v. Love bout being broadcast on six television screens and one projection screen. *Affidavit of Terron Mitchell*, ECF No. 17-2, PAGEID# 105 ("*Mitchell Affidavit*"). Mr. Mitchell estimated that the Montecristo Lounge had the capacity to hold more than 100 persons; he counted 10, 12, and 8 patrons at various times during his investigation. *Id.* at PAGEID# 106.

The second individual, Paul Jason Hall, entered the Montecristo Lounge about 45 minutes after Mr. Mitchell. *Affidavit of Paul Jason Hall*, ECF No. 17-3, PAGEID# 108 ("*Hall Affidavit*"). He paid a cover charge of $5.00 and observed the Santa Cruz v. Munoz undercard bout airing on three television screens. *Id.* Hall estimated that the Montecristo Lounge could hold approximately 100 people; he counted 19, 22, and 31 patrons at various times during his visit. *Id.* at PAGEID# 109.

No license to exhibit the Program was purchased for the Montecristo Lounge. *Gagliardi Affidavit 1*, PAGEID# 91.

A document attached to *Plaintiff's Motion*[5] identifies the House of Montecristo "DBA MONTECRISTO LOUNGE" as the holder of liquor permit number 4004631, and Diab Ellan as the CEO of the entity. *Ownership Disclosure Information*, PAGEID# 115, ECF No. 17-3.

*Plaintiff's Motion* seeks statutory damages in the amount of $10,000.00 and enhanced damages in connection with defendants' alleged

---

[4] This amount may have included Mitchell's purchase of a cigar. *Id*.

[5] The document appears to be information obtained from the Ohio Department of Commerce web site. Defendants do not challenge either the authenticity of the document or the accuracy of the information contained therein. *See* Fed. R. Civ. P. 56(c)(1), (2).

willful violation in the amount of $30,000.00. *Id.* at PAGEID# 76-85. Plaintiff also seeks an award of its costs and attorney fees. *Id.*

**II.   Standard**

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Furthermore, trial court does not bear the burden of searching the entire record to discover genuine issues of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Instead, the nonmoving party has an "affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."

## III. Discussion

### A. Liability

Section 605(a) of Title 47 to the United States Code provides, in relevant part, as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become

6

> acquainted with the contents, substance, purport, effect,
> or meaning of such communication (or any part thereof)
> knowing that such communication was intercepted, shall
> divulge or publish the existence, contents, substance,
> purport, effect, or meaning of such communication (or any
> part thereof) or use such communication (or any information
> therein contained) for his own benefit or for the benefit
> of another not entitled thereto.

47 U.S.C. § 605(a) (2015). "Any person aggrieved" by a violation of 47 U.S.C. § 605(a) may bring a civil action against the violator. 47 U.S.C. § 605(e)(3)(A). Under the statute, "any person aggrieved" includes any person with "proprietary rights in the intercepted communication by wire or radio." 47 U.S.C. § 605(d)(6).

In response to *Plaintiff's Motion*, defendants question plaintiff's rights to the Program and plaintiff's status as a "person aggrieved" for purposes of Section 605(e). Pointing to the Fee Schedule Flier, which characterizes "G&G Closed Circuit Events Inc." as the "OFFICIAL CLOSED-CIRCUIT PROVIDER, There is NO OTHER LEGAL LICENSOR," *id.* at PAGEID# 104, defendants argue that there exists a genuine issue of material fact whether plaintiff holds any rights in the Program. *Defendants' Response*, PAGEID# 119. Defendants also argue that the statement made in the *Gagliardi Affidavit 1* that J & J purchased the exclusive commercial exhibition licensing rights to broadcast the Program from Golden Boy Promotions, LLC, is not based on personal information and cannot therefore be considered by this Court. *Defendants' Response*, PAGEID# 121 (citing Fed. R. Civ. P. 56(c)(4)). Finally, defendants argue that, even assuming liability under Section 605, "damages should be considered on a case-by-case basis in a separate hearing." *Id.* at PAGEID# 121-22.

Defendants' first argument is satisfactorily addressed by the

*Gagliardi Affidavit 2,* which clarified that G&G was hired by J & J only to assist in the sale of sub-licensing rights to the Program; it was J & J that retained the exclusive right to pursue litigation in any piracy claim for unauthorized receipt of the broadcast. *Id.* at PAGEID# 128. Because there is no disputed issue of fact on this point, the Court concludes that plaintiff qualifies as "a person aggrieved" within the meaning of 47 U.S.C. § 605.

Defendants also argue that J & J's claim to rights in the Program is based on inadmissible hearsay. Defendants specifically argue that Mr. Gagliardi has no personal knowledge that Golden Boy Promotions was legally authorized to license rights in the Program to J & J. This Court disagrees. Joseph Gagliardi avers that plaintiff purchased the exclusive commercial exhibition licensing rights to broadcast the Program from Golden Boy Promotions, LLC. *Gagliardi Affidavit 1,* PAGEID# 90. The Licensing Agreement authenticated by Mr. Gagliardi also granted to J & J the exclusive right to commence or settle any legal claim arising out of piracy of the Program. *Licensing Agreement,* PAGEID# 97, 100. Mr. Gagliardi, the President of J & J, certainly has personal knowledge of the business dealings of J & J. If defendants intended to challenge the legal sufficiency of those dealings, it was incumbent upon them to adduce evidence and argument in support of such challenge.

In short, the Court concludes that plaintiff J & J is entitled to judgment on it claim under 47 U.S.C. § 605.

**B. Damages**

Plaintiff also requests an award of statutory damages in the

8

amount of $10,000.00, enhanced damages of up to $30,000.00, and a full award of litigation costs and attorneys' fees. *Plaintiff's Motion*, PAGEID# 81, 85. An "aggrieved party" under 47 U.S.C. § 605 may elect, for each violation, either actual damages caused by the interception or statutory damages ranging from $1,000.00 to $10,000.00. 47 U.S.C. § 605(e)(3)(C). Should a court find that the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court may, in its discretion, enhance the damages awarded by up to $100,000.00 per violation. 47 U.S.C. § 605(e)(3)(C)(ii). Moreover, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

Defendants oppose any consideration of damages unless and until liability is determined. *Defendants' Response*, PAGEID# 121. Liability has now been determined, and the issue of damages is appropriate for consideration.

Defendants also argue that damages should not be determined without an evidentiary hearing. *Id.* Plaintiff has not responded to this contention. Although the Court is not persuaded that an evidentiary hearing is required, the Court will nevertheless defer its consideration of the issue of damages until after the parties have had the opportunity to attempt to resolve the remaining issues in the case.

Should the parties be unable to resolve the issue of damages and attorney fees, plaintiff may have until April 29, 2016, to supplement, with appropriate evidentiary materials, its request for damages and

attorneys fees. Defendants may have until May 23, 2016 to respond, with appropriate evidentiary materials. Plaintiff may have until June 6, 2016 to reply.  If any party concludes that an evidentiary hearing on the remaining issues is warranted, that party shall expressly so request and provide legal authority for its position.

WHEREUPON, *Plaintiff J & J Sports Productions, Inc.'s Motion for Summary Judgment on Diab Ellan and House of Montecristo, Inc.*, ECF No. 17, is **GRANTED**.

It is **ORDERED** that, should the parties be unable to resolve the issues of damages and attorney fees, plaintiff may have until April 29, 2016, to supplement, with appropriate evidentiary materials, its request for damages and attorneys fees. Defendants may have until May 23, 2016 to respond, with appropriate evidentiary materials. Plaintiff may have until June 6, 2016 to reply.  If any party concludes that an evidentiary hearing on the remaining issues is warranted, that party shall expressly so request and provide legal authority for its position.

March 25, 2016

                                           *s/  Norah McCann King__    _*
                                        Norah McCann King
                                 United States Magistrate Judge

10